**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Criminal Case No. SAG-22-320** |
| | * | |
| **CEDRICK PEEBLES** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Defendant Cedrick Peebles is charged with one count of possession of a firearm by a prohibited person under 18 U.S.C. § 922(g), stemming from a traffic stop and search incident to his arrest on June 24, 2022. Pending before the Court is Defendant's motion to suppress evidence of the firearm as a violation of the Fourth Amendment. ECF 40. On August 31, 2023, the Court heard testimony and argument on Defendant's motion and requested supplemental briefing on the validity of Defendant's arrest for fleeing and eluding police under Section 21-904(b) of the Maryland Transportation Code. The parties have completed the supplemental briefing. ECF 50, 51. For the reasons that follow, the Court will deny Defendant's motion to suppress.

## I.     BACKGROUND

The following facts are derived from the testimony and evidence presented at the motions hearing. In the evening of June 24, 2022, Defendant drove a silver Nissan Altima ("Nissan") down the 500 block of Chateau Avenue in Baltimore while seven members of the Baltimore Police Department ("BPD") patrolled the area. Four officers drove in an unmarked Hyundai Santa Fe ("SUV") and three officers drove in a Ford Focus ("Ford"). All seven officers were in plain clothes but wore departmentally issued tactical vests with "POLICE" marked on the front and back. The

1

SUV and the Ford followed behind Defendant as he traveled down Chateau Avenue. Defendant then turned right onto a well-lit Govane Avenue and stopped in a zone marked "No Stopping." While he did so, the SUV pulled forward on Chateau Avenue and stopped ahead of the Nissan to monitor a crowd of people at the end of the block. The Ford, meanwhile, turned right onto Govane Avenue, pulled ahead of the Nissan, and flashed its police lights. One officer, Detective Clayton Leak, exited the Ford to investigate the parking violation. As he did so, Defendant reversed his vehicle and struck the SUV behind him. Detective Leak, wearing a badge in addition to his tactical police vest, audibly ordered Defendant to stop the car, but the Defendant moved forward several feet and came to rest on the curb of Govane Avenue. Officers then descended upon the Nissan, entered the vehicle, and arrested Defendant for attempting to flee and elude police.

While Defendant was under arrest, officers searched him and found a firearm in the left pocket of his shorts. The officer who searched Defendant, Sergeant Ryan Wagner, suspected Defendant was armed because of "his erratic actions with his vehicle" and because his pocket shorts were uneven, "indicating a heavy object on the left side." ECF 41 at 9. Officers then charged Defendant with prohibited possession of a firearm and issued him citations for fleeing and eluding and for the parking violation. *Id.* at 3.

Defendant moved to suppress evidence of the firearm, asserting that officers lacked probable cause for the initial traffic stop and for the subsequent arrest. ECF 40. The government contended that officers had probable cause to conduct the traffic stop and to arrest Defendant once he attempted to flee and elude the officers. ECF 41 at 7–9. After considering the parties' motions and evidence presented at the hearing, the Court reserved ruling on the validity of Defendant's arrest pending supplemental briefing on whether officers wearing tactical vests marked "POLICE"

over their plain clothes satisfies the uniform requirement in Section 21-904(b) of the Maryland Transportation Code.

## II.    LEGAL STANDARDS

Probable cause to arrest exists where the facts and circumstances are "sufficient to warrant a prudent man in believing that [the defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "While probable cause requires more than 'bare suspicion,' it requires less than that evidence necessary to convict." *United States v. Walker*, 607 F. App'x 247, 253 (4th Cir. 2015) (citation and internal quotation marks omitted). Probable cause is examined under "an objective standard of probability that reasonable and prudent persons apply in everyday life." *Id.* (citation and internal quotation marks omitted). Thus, to determine the existence of probable cause, courts "examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; [courts] do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause." *Id.* (citation and internal quotation marks omitted). Finally, if police officers have probable cause to arrest, they may search suspects incident to that arrest to remove any weapons that the arrestee may use. *See Arizona v. Gant*, 556 U.S. 332, 338–39 (2009).

## III.    DISCUSSION

Section 21-904(b) makes it unlawful to attempt to elude a police officer who gave a visual or audible signal to stop and was "in uniform, prominently displaying the officer's badge or other insignia of office." Md. Code Ann., Transp. § 21-904(b). The statute fails to define "uniform," so the Court must ascertain its meaning through statutory interpretation. "In Maryland, the 'cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of

3

the General Assembly.'" *Just Puppies, Inc. v. Frosh*, 565 F. Supp. 3d 665, 707 (D. Md. 2021) (quoting *Conaway v. State*, 212 A.3d 348, 358 (2019)); *see id.* at 706 ("[W]hen interpreting a state statute, a federal court should 'apply the statutory construction rules of the state's highest court.'") (quoting *In re DNA Ex Post Facto Issues*, 561 F.3d 294, 300 (4th Cir. 2009)). Where a statute fails to define a term, the undefined terms are "interpreted as taking their ordinary contemporary, common meaning." *Id.* (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)). Dictionary definitions may provide "a useful starting point" to ascertain a term's common meaning, but "[c]ourts may also consider a statute's history and purpose to give effect to its language." *Id.* at 706–07.

Merriam-Webster's Online Dictionary defines a "uniform," as a "dress of a distinctive design or fashion worn by members of a particular group and serving as a means of identification." *Uniform*, Merriam-Webster, https://www.merriam-webster.com/dictionary/uniform#dictionary-entry-3 (last visited Oct. 5, 2023). Something is "distinctive" if "serv[es] to distinguish or "mark[s] as separate or different." *Distinctive*, Merriam-Webster, https://www.merriam-webster.com/dictionary/distinctive?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited Oct. 5, 2023). These definitions plainly demonstrate that a tactical vest marked with "POLICE" on the front and back can suffice as a "uniform," because the vest distinguishes and identifies BPD police officers while they are on duty.

Subsequent language in Section 21-904 makes clear that the purpose of the uniform requirement is to effect compliance with a signal to stop by notifying the public that the person giving the signal is a police officer. For example, in addition to wearing a uniform, the officer must also be "prominently displaying the police officer's badge or other insignia of office," when giving a stop signal. MD. CODE ANN., TRANSP. § 21-904(b). A person may also violate Section 21-904

4

regardless of whether an officer is uniformed if the officer "is in a vehicle appropriately marked as an official police vehicle." *Id.* § 21-904(c). Such a vehicle requires official markings or designations, not simply one equipped with sirens and lights, because "notice of the authority of the officer to give the signal is essential" to the crime of fleeing and eluding. *Williams v. State*, 24 A.3d 210, 233–34 (Md. 2011) (quoting *United States v. Goodwin*, 637 F.2d 250, 256 (4th Cir. 1981), *rev'd on other grounds by* 457 U.S. 168 (1982)). Because a tactical vest clearly marked with "POLICE" provides the requisite notice of an officer's authority, the Court finds that it satisfies the uniform requirement in Section 21-904(b).

The Court also finds persuasive authority from a handful of out-of-state cases. In these cases, courts examined uniform requirements in analogous fleeing-and-eluding statutes, ascertained the plain meaning and purpose of "uniform," and found that tactical vests marked with "Police" were uniforms under those statutes. *See, e.g.*, *People v. Estrella*, 37 Cal. Rptr. 2d 383, 389 (Cal. Ct. App. 1995) ("Defendant's assertion that a reasonable person would not consider a vest as a police uniform lacks support in either logic or experience."); *State v. Connors*, 442 P.3d 20, 22 (Wash. Ct. App. 2019) ("So long as an officer deploying the signal to stop is attired in a distinctive garment that clearly identifies him as a member of law enforcement, the statutory requirement of a 'uniform' is met."); *People v. Hardnett*, 2020 IL App (2d) 180139-U, ¶ 20, 2020 WL 1951928, at *3 (Apr. 23, 2020) ("[T]he uniform requirement may be met by showing that the officer wore something other than a 'traditional police uniform. Thus, a police tactical vest with police markings, or other indicia of police authority, such as an exposed badge or a sidearm satisfies [the statute]."). *But see Davis v. State*, 858 N.E. 2d 168, 172 (Ind. Ct. App. 2006) (holding that a vest that said "POLICE" in plain white letters and a badge worn on the officer's shoulder

"did not bear . . . any other marks of distinction" and "the attire [was] not a uniform for the purposes of stopping someone for violating an Indiana law").

Defendant argues that the plain or common meaning of "uniform" in the Maryland fleeing-and-eluding statute should be determined with reference to the BPD's uniform policies. ECF 50 at 5–7. For example, in Policy 1005, the BPD defines a non-uniformed officer as one wearing "civilian attire mixed with law enforcement equipment," otherwise known as "plain clothes." ECF 50-1 at 2. Policy 1005 also specifically identifies a "duty belt and ballistic vest with 'POLICE' marked on it," as an example of this mixed attire. *Id.* While offering some guidance, the BPD's policies do not assist the Court in discerning the "real and actual intent of the General Assembly," when it enacted Section 21-904(b). *Just Puppies, Inc. v. Frosh*, 565 F. Supp. 3d 665, 707 (D. Md. 2021) (internal quotation marks and citations omitted). One city's police department uniform policies have little to say about what the state legislature might have intended, and the Court is unaware of any case law that references such policies to effectuate state-wide legislative intent.

The Court is also unpersuaded by Defendant's discussion of *Thornton v. State*, where the Maryland Court of Appeals (now the Supreme Court of Maryland) excluded evidence of a firearm recovered from an illegal stop and frisk. 214 A.3d 34 (Md. 2019); *see* ECF 50 at 4. The facts of that case may seem similar insofar as the defendant attempted to flee a traffic stop from officers in unmarked cars and wearing only tactical vests marked "POLICE." However, the only issue resolved on appeal in *Thornton* was whether the defendant's attempted flight purged the taint of the unlawful stop and frisk, not whether the officers' outerwear satisfied the uniform requirement in Section 21-904(b). 214 A.3d at 57. *Thornton* therefore has no bearing on the specific issue necessary to resolve this motion to suppress.

Accordingly, the Court finds that officers had probable cause to arrest Defendant for attempting to flee and elude because when they audibly signaled to Defendant to stop his vehicle, they were "in uniform, prominently displaying [their] badge[s] or other insignia of office." MD. CODE ANN., TRANSP. § 21-904(b). A reasonable person, considering the totality of the circumstances here, could thus believe Defendant attempted to flee and elude police. Officers then conducted a lawful search of Defendant's person incident to arrest and discovered a prohibited firearm. *See Arizona v. Gant*, 556 U.S. 332, 338–39 (2009). Consequently, Defendant's motion to suppress evidence of the firearm is denied.

## IV.    CONCLUSION

For the reasons stated above, the Court denies Defendant's motion to suppress evidence. A separate Order follows.


Dated: October 5, 2023                              _____/s/_____

                                                    Stephanie A. Gallagher
                                                    United States District Judge

7